# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Wendy Thompson,

     Plaintiff,

v.

Kanabec County
& Mille Lacs County,

     Defendants.

Court File No.: 17-cv-1926

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

For her Complaint against Defendants Kanabec County and Mille Lacs County, Plaintiff Wendy Thompson states and alleges as follows:

## PARTIES

1.    Plaintiff Wendy Thompson is an individual who resides in Mora, Mille Lacs County, Minnesota. During the relevant times herein, Plaintiff was an employee of Kanabec County.

2.    Kanabec County is a governmental subdivision in the State of Minnesota.

3.    Mille Lacs County is a governmental subdivision in the State of Minnesota.

## JURISDICTION AND VENUE

4.    Plaintiff's claims arise under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Original jurisdiction for these claims is conferred upon this Court by 28 U.S.C. § 1331.

5.    Plaintiff also asserts claims under Minnesota state law. Supplemental jurisdiction for these claims is conferred upon this Court by 28 U.S.C. § 1367.

1

6.     Venue is appropriate because the unlawful practices described hereinafter were committed in the District of Minnesota.

## FACTUAL ALLEGATIONS

7.     Plaintiff is a licensed Registered Nurse with a Doctor of Nursing Practice Degree, who has more than 30 years of experience in health and human services.

8.     Plaintiff began her employment with Defendant Kanabec County in October 1991. She served as Director of Public Health for 25 years, and for the last 10 years also served as Health and Human Services Director.

9.     During her long career with Kanabec County, Plaintiff was a dedicated, high-performing employee.

10.     In addition to working for Kanabec County, Plaintiff, for the last 18 years, has taught classes as an adjunct professor at Bethel University.

11.     Plaintiff is the mother of eight children. In September 2016, the youngest two children were 13 and 17 years of age and residing with Plaintiff and her husband, along with the fourth youngest child, who, during all relevant times, was of majority age.

12.     In mid-2016, Plaintiff's oldest daughter, Rebekah Templin (formerly Thompson), who was 26 years old at the time, called Plaintiff and told her that at least eight years earlier, Kim Thompson had sexually abused her. At the time of the call, Templin had been moved out of Plaintiff's residence, and estranged from the family, for approximately eight years.

13.     Plaintiff was surprised and skeptical of Templin's allegations, as Templin had a history of dishonesty with the family and Plaintiff had neither witnessed any sexual

abuse in her home, nor seen any indications of sexual abuse. Nevertheless, Plaintiff followed up by asking the children living with her whether they were safe, and encouraged them to be forthcoming to her if they did. All three children denied having any concerns about their safety.

14. In late September 2016, Plaintiff's husband, Kim Thompson, was arrested and charged in Mille Lacs County court with multiple counts of criminal sexual conduct and kidnapping based on Templin's allegations.

15. Shortly after the charges, Mille Lacs County opened a Child Protection Investigation of Plaintiff and her husband.

16. On or about September 29, 2016, Mille Lacs County investigator Jessy Vittum met with Plaintiff to discuss a Child Protective Services Plan for Plaintiff's youngest two children.

17. During the meeting, Vittum stated that she intended to contact Anoka County to obtain records from a 2001 investigation into Kim Thompson that did not result in criminal charges and had been closed for more than a decade. Plaintiff stated that she believed doing so would be improper.

18. On October 4, 2016, Plaintiff informed the administrative team at Kanabec County's Health and Human Services that her husband had been charged with a crime.

19. Immediately after the meeting in which Plaintiff informed the team of the news, County Commissioner Patrick Christopherson placed Plaintiff on paid administrative leave, required Plaintiff to turn in her cell phone and iPad, and instructed

Plaintiff to cease communicating with any Kanabec County employees about work-related matters.

20.    Christopherson told Plaintiff that he intended to reinstate Plaintiff once the "news died down." Although he was not affiliated with Bethel University, Christopherson also said that, "for now, [Plaintiff] could continue to teach at Bethel University."

21.    Plaintiff received a letter dated October 4, 2016 from Christopherson stating: "Reports indicate that you are under investigation by Mille Lacs County Child protection services. To be effective immediately, . . . you will be placed on paid administrative leave while the investigation into your alleged misconduct is concluded."

22.    On Friday, October 14, 2016, Christopherson called Plaintiff and told her he was scheduling an interview the following Tuesday, October 18, 2016, between Plaintiff and a human resources attorney. He told Plaintiff that she would be interviewed about statements Plaintiff had made during the investigation.

23.    Christopherson also told Plaintiff that she would be provided a summary of the attorney's findings following the interview and would thereafter have an opportunity to meet with the County Board to provide Plaintiff's side of the story. Christopherson stated that Plaintiff could bring an attorney to the interview.

24.    Plaintiff asked Christopherson how Kanabec County had received the statements she had made during the Child Protection investigation. Christopherson did not answer but instead commented that he had to read the reports and did not wish that

upon anyone. He said that it "sounded like" there may be a way to ensure the information remained private.

25. On Monday, October, 17, 2016, Plaintiff informed Christopherson that the attorney she planned to have accompany her to the interview was unavailable on October 18, 2016. She also said that the attorney had concerns that Plaintiff would be asked questions about her husband's criminal case.

26. Christopherson responded that the Kanabec County attorney wanted to hold the interview as soon as possible.

27. On October 18, 2016, Christopherson called Plaintiff and told her that the interview had been scheduled for that Friday, October 21, 2016. Plaintiff told Christopherson again that her attorney had concerns about questioning relating to her husband's criminal charges.

28. That Friday, an attorney interviewed Plaintiff on behalf of Kanabec County. Christopherson was also present during the interview. At the beginning of the interview, the attorney directed Plaintiff to sign a Tennesen Warning, but she did not offer a Garrity Warning until partway through the interview.

29. The attorney asked Plaintiff several questions about Plaintiff's husband, including what Plaintiff knew about her husband before getting married to him, what conversations Plaintiff had with her husband while they were dating about raising children, whether her husband had ever been suicidal, and details about events that occurred during her husband's previous marriage.

30.     The attorney also asked Plaintiff detailed questions about the allegations in her husband's criminal complaint, allegations made during the closed 2001 Mille Lacs County investigation, and other alleged criminal history of her husband from before her marriage to him.

31.     The attorney asked about whether Plaintiff witnessed or knew of any alleged sexual abuse of her children. Plaintiff asserted that she had not witnessed any sexual abuse of her children, was unaware that any such abuse occurred, and had not failed to make any mandatory reports.

32.     During the interview, Plaintiff objected to much of the attorney's questioning as unrelated to her job. Plaintiff said that she had been married for 32 years and many of the questions asked were directed at events that occurred before she even worked for Kanabec County. Plaintiff also objected that questioning about her husband's criminal case was improper.

33.     On October 21, 2017, Plaintiff had her 25th work anniversary with Kanabec County. Although she had been assured that she was not being reprimanded while on administrative leave, Plaintiff was not recognized for her 25 years of service to Kanabec County, contravening the county's longstanding policy for recognizing such anniversaries.

34.     On November 1, 2017, Christopherson left Plaintiff a voicemail stating that Kanabec County's attorneys would be giving a "rundown of their findings" in a closed session that evening. Christopherson told Plaintiff she could not be in attendance. He said that he did not believe they would be making "any kind of a decision tomorrow," so she

should not worry. Christopherson stated that if they got through the discussion and it looked like there would be decisions made, he would give her a call. He asked Plaintiff to call him the following morning before 9:00 a.m.

35.     Plaintiff called Christopherson the next day at 8:05 a.m. and Christopherson told Plaintiff that "the recommendation" was to terminate Plaintiff's employment. He told Plaintiff that she would have to fight for her job, but if the child protection investigation concluded in her favor, the Board would probably reinstate her. Plaintiff stated that she did not understand why she was being terminated, as she had not done anything illegal.

36.     On November 3, 2016, Christopherson called Plaintiff and informed her that the Board would wait until the child protection investigation concluded, but said Plaintiff would no longer be on paid administrative leave but rather would have to use PTO. Christopherson said the change was triggered by Plaintiff's request to postpone the Board termination decision, even though Plaintiff had made no such request but had merely been informed there would be a postponement.

37.     On November 14, 2016 at 3:40 p.m., Christopherson called Plaintiff's home phone and left a voicemail telling Plaintiff that her paycheck was ready for her to pick up. During the times Christopherson called Plaintiff previously during her administrative leave, he routinely called Plaintiff on three different phone numbers; this time he only called the home phone.

38.     At 7:30 p.m. the same night, Kanabec County's two investigators arrived at Plaintiff's residence in an unmarked car and stated that they were performing a welfare check because some of Plaintiff's coworkers were concerned that Plaintiff had not picked

up her paycheck. Plaintiff, however, did not receive any phone calls or voicemails from any of her Kanabec County coworkers that day.

39.   Kim Thompson asked the investigators if they had contacted Mille Lacs officials, and the investigators denied having done so, stating that they "would never call Mille Lacs County."

40.   Plaintiff came out of the house, and the investigators eventually said that they could see Plaintiff was "okay" and left her residence.

41.   Plaintiff later learned that Al Tutland, an investigator from Mille Lacs County's sheriff department, had called Bethel University's Program Director at 5:15 p.m. on November 14th, claiming he was checking on Plaintiff's welfare.

42.   On November 18, 2016, Plaintiff had a doctor's appointment and learned that she would need surgery in the near future to remove a tumor/fibroid in her uterus.

43.   Later on November 18, 2016, Plaintiff had a phone call with Jessy Vittum, the Mille Lacs employee working on a Child Protective Services Plan for Plaintiff's family. Vittum informed Plaintiff that she had received a phone call from Kanabec County Attorney Barb McFadden. Vittum asked whether Plaintiff knew why McFadden called her. Plaintiff stated that McFadden was likely trying to get information about Vittum's investigation and the Child Protective Services Plan. Vittum stated that she could not share the information without a written release from Plaintiff. Plaintiff stated that she did not plan to sign such a release.

44.   On November 21, 2016, Plaintiff called Christopherson and left a voicemail stating that she wished to speak with him about several matters. When Christopherson

8

called back, Plaintiff told Christopherson that she had not received a summary or documentation from the human resources attorney regarding her interview, and that she wished to have the summary so that she could provide a response. Plaintiff also advised Christopherson that she had not yet received a report from Mille Lacs County regarding its Child Protective Services Plan or related investigation. Plaintiff also raised several concerns about her employment benefits during the paid administrative leave, including mileage and expense reimbursements Kanabec County had not paid and health insurance plan correspondence it had not sent.

45.     During the November 21st phone call, Plaintiff also informed Christopherson that she was under a physician's care and needed to have surgery in the near future to remove a tumor. Christopherson asked what kind of tumor she had, and Plaintiff responded that it was fibroid. Christopherson commented that Plaintiff "better take care of [herself]."

46.     On November 25, 2016, Plaintiff received notice that Mille Lacs County issued a maltreatment determination against her for "threatened sexual abuse" of her two youngest sons, based on the false assumption that Plaintiff, as a mandatory reporter, should have reported Rebekah Templin's allegations of sexual abuse against Kim Thompson to authorities when Templin relayed them to Plaintiff eight years after the alleged abuse had occurred. The determination stated that there was a "lack of corroborating evidence to show that the children have been physically harmed by their parents," and as a result, other allegations of abuse were not substantiated. Plaintiff made a timely request for reconsideration of the determination.

9

47.     In the week or so after Plaintiff received the notice of determination, Plaintiff attempted to reach Christopherson by phone on multiple occasions, but Christopherson did not return Plaintiff's calls.

48.     On December 4, 2016, Plaintiff and Kim Thompson met with Kanabec County Commissioner Les Nielson at Nielson's house. Plaintiff and her husband conveyed their concerns that Christopherson was not relaying all information about Plaintiff to the Board, including the fact that Plaintiff was scheduled for surgery. They also stated that they believed that Christopherson was not objective in dealing with the circumstances surrounding Plaintiff's employment, and that it appeared that Kanabec County and Mille Lacs County were colluding with each other. Finally, Plaintiff and her husband reported that they believed there had been a welfare check on November 14th that appeared not to be truly checking on Plaintiff's welfare, but rather an attempt to interfere with Plaintiff's employment with Bethel University.

49.     During the meeting, Nielson denied that there was collusion between the counties, and denied that he knew about Plaintiff's surgery. Nielson also stated that he had heard about the welfare check.

50.     Nielson told Plaintiff that the Board knew Plaintiff was a dedicated employee, and had an impeccable performance record. He said that those things did not matter, however, because Plaintiff was an at-will employee who the Board members could fire "for having blue eyes if [they] wanted to." He asked Plaintiff: "Wouldn't it be better to resign than be terminated?"

51.   On December 7, 2016, Plaintiff's doctor issued her a note stating that Plaintiff's surgery was scheduled for December 12, 2016, and that Plaintiff would need about four weeks' off work following surgery to recover.

52.   The same day, Plaintiff had a phone call with Christopherson during which they discussed the maltreatment determination. Oddly, Christopherson stated that Kanabec County was primarily concerned about the physical abuse findings, and was not necessarily going to consider the sexual abuse findings. Christopherson said that the Board would allow Plaintiff to resign in lieu of terminating her employment. Plaintiff responded that she did not understand what she had done to be terminated. Christopherson said that he thought the Board "believed" Plaintiff. Plaintiff asked whether termination or resignation were her only options. Christopherson replied that they were not, but offered no additional options. He told Plaintiff that he would call Plaintiff after the Board met. Plaintiff informed Christopherson that she was requesting a reconsideration of, and if necessary appealing, the maltreatment determination.

53.   That evening, Christopherson called Plaintiff and informed her that there was a meeting scheduled between the Board and Plaintiff for December 16, 2016.

54.   Plaintiff informed Christopherson that she was scheduled for surgery on December 12th, and would need four weeks' leave following surgery per her doctor's orders.

55.   Christopherson refused to reschedule the Board meeting. He also told Plaintiff that, in order to meet with the Board, she would need to disclose Mille Lacs County's maltreatment determination to the Board beforehand.

11

56.    On the morning of December 9, 2016, Plaintiff visited Christopherson's office and provided him with the maltreatment determination along with her request for reconsideration and supporting documents. Plaintiff stated that she wanted her side of the story to be heard by the Board and did not wish the Board's decision to rely solely on the maltreatment determination. Plaintiff also told Christopherson that she had letters from her doctor regarding her upcoming surgery that she would provide to him.

57.    Although Plaintiff notified Kanabec County on multiple occasions of her need for medical leave, the county never sent Plaintiff FMLA paperwork.

58.    On December 12, 2016, Plaintiff had a hysterectomy and spent the night in the hospital.

59.    The following day, after being released from the hospital, Plaintiff went to Christopherson's office to provide her doctor's note regarding surgery and leave. Since he was not in, Plaintiff left the doctor's note on Christopherson's desk.

60.    On December 16, 2016, Mille Lacs denied Plaintiff's request for reconsideration of the maltreatment determination. Plaintiff subsequently filed a timely appeal to the Department of Human Services.

61.    Kanabec County informed Plaintiff on December 16th that the Board would hold a closed special meeting to discuss Plaintiff's termination.

62.    Plaintiff requested that the meeting be postponed in light of Plaintiff's recent surgery and medical leave.

63.    On the evening of December 19th, a police officer delivered Plaintiff a letter informing Plaintiff that Kanabec County was moving forward with a Board meeting on

December 21st. The letter also erroneously suggested that the county had not received notice of Plaintiff's need for medical leave until the prior week.

64.   Plaintiff emailed Christopherson on the morning of December 20th, stating that she was disappointed to learn that Kanabec County was proceeding with the meeting and requiring her attendance despite knowing she was ill. Plaintiff reminded Christopherson that she had put Kanabec County on notice of her need for medical leave before the prior week—in conversations with both Christopherson and Commissioner Nielson on November 21st and December 4th respectively.

65.   In the email, Plaintiff reported that she believed she was the target of discrimination on the basis of her marital status and possibly her religion. She requested an independent investigation into the discrimination and retaliation due to her good faith participation in the investigation process.

66.   Later on December 20, 2016, Plaintiff submitted a letter to the Kanabec County Commissioners, requesting that the December 21st meeting be postponed as Plaintiff was on leave from her recent surgery and experiencing some physical consequences from Kanabec County's interference with her FMLA leave. Plaintiff stated that if she did not receive notice that the meeting would be postponed, she would plan to attend the meeting with her attorney, despite any physical consequences doing so might cause. Plaintiff also stated that she had been stunned by the maltreatment determination that she engaged in "threatened sexual abuse" against her sons, as there had never been an accusation by anyone—including Templin—that Plaintiff's two sons had ever been the victims of abuse or threatened abuse. Plaintiff stated that there was no reason to

13

terminate her employment except to terminate her for being married to an accused man, and requested reinstatement to her position following the conclusion of her medical leave. Alternatively, Plaintiff requested that the County place her on a leave of absence pending the appeal of her maltreatment determination to the Department of Human Services.

67.    Kanabec County did not agree to any of Plaintiff's requests. Plaintiff was instead informed that Kanabec County intended to move forward with the closed special meeting to consider Plaintiff's termination, and it was "not requiring" that Plaintiff attend. Kanabec County's Chair, Gene Anderson, suggested that Plaintiff could resign from her position in lieu of termination.

68.    Around 8 p.m. on December 20, 2016, feeling she had no other viable option, Plaintiff submitted her resignation to Kanabec County, effective January 10, 2017.

69.    When Plaintiff returned home on December 20th, Plaintiff was in significant pain—and could barely walk—as a result of being on her feet for a significant period of time only a week after her major surgery, in order to make copies and send correspondence to Kanabec County.

70.    The next morning, Christopherson emailed Plaintiff a letter stating that Kanabec County accepted Plaintiff's resignation.

71.    On December 27, 2016, Plaintiff submitted a data request to Jessy Vittum at Mille Lacs County for all data relating to the recent maltreatment investigation.

72.     On February 6, 2017, Plaintiff received a call from Jordyn Hubin in Child Protection Services at Mille Lacs County, stating that Plaintiff had submitted the wrong form for her data request, and stating that she would send Plaintiff the correct form.

73.     The next day, February 7, 2017, Plaintiff resubmitted her data request on the new form in person at Mille Lacs County Social Services. The receptionist informed Plaintiff that she should receive a response within ten working days.

74.     On February 16, 2017, Mille Lacs County responded to Plaintiff's request for summary disposition of her maltreatment determination by conceding that the determination had been in error, and stating that it would be reversing its determination.

75.     On February 23, 2017, Mille Lacs County formally reversed its maltreatment determination against Plaintiff.

76.     On February 27, 2017, Jordyn Hubin from Child Protection Services at Mille Lacs County called Plaintiff and advised her that the child protection case against her had been closed. Hubin asked if Plaintiff still wanted the data from her data request, and Plaintiff confirmed that she did.

77.     Plaintiff did not receive a response to her data request until March 11, 2017, 75 days after her original request.

78.     On March 22, 2017, Plaintiff sent an email to Christopherson stating that her PTO had been erroneously paid out by Kanabec County during the timeframe November 26, 2016 to December 9, 2016, when Kanabec County had placed Plaintiff on a paid administrative leave pending the investigation into her maltreatment

determination. Plaintiff demanded the remittance of 80 hours of PTO that was erroneously used during that timeframe.

## COUNT I

### VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT
### (Kanabec County)

79.     Plaintiff incorporates the above paragraphs as if fully restated herein.

80.     Pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and its regulations, it is unlawful for employers to interfere with, restrain, or deny the exercise or attempted exercise of rights under the FMLA.

81.     It is also unlawful under the FMLA and its regulations for employers to discriminate against employees for exercising their rights under the FMLA, attempting to exercise their rights under the FMLA, or opposing any practice made unlawful under the FMLA.

82.     Defendant Kanabec County was Plaintiff's employer, and a covered employer, for purposes of the FMLA.

83.     Plaintiff was an eligible employee for purposes of the FMLA.

84.     Plaintiff notified Kanabec County of her need for FMLA leave due to a serious health condition.

85.     Defendant Kanabec County violated the FMLA by interfering with Plaintiff's FMLA rights and discriminating against Plaintiff for attempting to exercise her FMLA rights and opposing its violations of the FMLA.

86.     Defendant's violations of the FMLA caused Plaintiff to suffer and loss of income, employment benefits, and other damages in an amount to be determined at trial.

## COUNT II

### MARITAL STATUS DISCRIMINATION
### MINNESOTA HUMAN RIGHTS ACT
### (Kanabec County)

87.     Plaintiff incorporates the above paragraphs as if fully restated herein.

88.     The Minnesota Human Rights Act, Minn. Stat. § 363A.08, subd. 2 makes it an unlawful employment practice for an employer to discharge an employee, or discriminate against a person, because of marital status or familial status.

89.     Marital status, for purposes of the MHRA, "includes protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse[.]" Minn. Stat. § 363A.03, subd. 24.

90.     Familial status, for purposes of the MHRA, means, in relevant part, "the condition of one or more minors being domiciled with . . . their parent or parents[.]" Minn. Stat. § 363A, subd. 18.

91.     At all times material and relevant hereto, Plaintiff and Defendant Kanabec County were employee and employer, respectively, for purposes of Minn. Stat. § 363A.08.

92.     Defendant Kanabec County violated the MHRA, Minn. Stat. § 363A.08, subd. 2.

93.     As a direct and proximate result of Defendant's violations, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT III

**AIDING AND ABETTING**
**MINNESOTA HUMAN RIGHTS ACT**
**(Mille Lacs County)**

94.     Plaintiff incorporates the above paragraphs as if fully restated herein.

95.     The MHRA, Minn. Stat. § 363A.14, provides that it is an unfair discriminatory practice for any person to—or attempt to—intentionally aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by the MHRA. It also provides that intentionally obstructing or preventing any person from complying with the MHRA is an unfair discriminatory practice.

96.     Defendant Mille Lacs violated the MHRA, Minn. Stat. § 363A.14.

97.     As a direct and proximate result of Defendant's violations, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT IV

**VIOLATIONS OF THE MINNESOTA GOVERNMENT DATA PRACTICES ACT**
**(Kanabec County & Mille Lacs County)**

98.     Plaintiff incorporates the above paragraphs as if fully restated herein.

99.     The Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.05, subd. 4, provides that "[p]rivate or confidential data on an individual shall not be

collected, stored, used, or disseminated by government entities for any purposes other than those stated to the individual at the time of collection" except in limited circumstances.

100.    The MGDPA, Minn. Stat. § 13.05, subd. 10, provides that a "responsible authority shall allow another responsible authority access to data classified as not public only when the access is authorized or required by statute or federal law."

101.    Pursuant to Minn. Stat. § 13.46, "[d]ata on persons . . . that is collected, maintained, used, or disseminated by the welfare system in an investigation, authorized by statute, and relating to the enforcement of rules or law are confidential data on individuals  . . . or protected nonpublic data not on individuals . . . and shall not be disclosed except

(1) pursuant to section 13.05;
(2) pursuant to statute or valid court order;
(3) to a party named in a civil or criminal proceeding, administrative or judicial, for preparation of defense; or
(4) to provide notices required or permitted by statute."

102.    Pursuant to Minn. Stat. § 13.82, subd. 7, "investigative data collected or created by a law enforcement agency in order to prepare a case against a person . . . for the commission of a crime or other offense for which the agency has primary investigative responsibility are confidential or protected nonpublic while the investigation is active."

103.    Pursuant to Minn. Stat. § 13.82, subd. 9, "[i]nvestigative data that become inactive" because of a decision by the agency not to pursue the case or the expiration of

the statute of limitations, "and that relate to the alleged abuse or neglect of a child by a person responsible for the child's care . . . are private data."

104.   Kanabec County is a responsible authority for purposes of the MGDPA.

105.   Mille Lacs County is a responsible authority for purposes of the MGDPA.

106.   Kanabec County violated the MGDPA by improperly collecting, using, storing, and/or disseminating private, confidential, and/or nonpublic data about Plaintiff and her family.

107.   Mille Lacs County violated the MGDPA by improperly collecting, using, storing, and/or disseminating private, confidential, and/or nonpublic data about Plaintiff and her family.

108.   Defendants' violations of the MGDPA were willful.

109.   As a direct and proximate result of Defendants' MGDPA violations, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT V

**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Mille Lacs County)**

110.   Plaintiff incorporates the above paragraphs as if fully restated herein.

111.   Plaintiff had a contractual relationship with Kanabec County for employment.

112. Defendant Mille Lacs County had knowledge of Plaintiff's employment with Kanabec County.

113. Defendant Mille Lacs County intentionally—and unjustifiably—interfered with, and procured the termination of, Plaintiff's employment with Kanabec County.

114. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, humiliation, and other damages in an amount to be determined at trial.

## COUNT VI

### WAGE PAYMENT VIOLATIONS – MINN. STAT. § 181.14
### (Kanabec County)

115. Plaintiff incorporates the above paragraphs as if fully restated herein.

116. Minn. Stat. § 181.14 provides that, upon an employee's separation of employment, an employer shall pay an employee all wages or commissions earned and unpaid no later than the first regularly scheduled payday following the employee's final day of employment, and that any wages not paid within the required time period "shall become immediately payable upon the demand of the employee."

117. Minn. Stat. § 181.14 imposes a "penalty equal to the amount of the employee's average daily earnings at the employee's regular rate of pay" for up to 15 days, in addition the unpaid wages, if the wages are not paid within 24 hours of the demand.

118. Defendant Kanabec County violated Minn. Stat. § 181.14 by failing to promptly pay Plaintiff all her earned and unpaid wages.

119.    Plaintiff made a written demand for unpaid wages, but Defendant still failed to pay Plaintiff her outstanding wages.

120.    As a result of Defendant's violations, Plaintiff has suffered lost wages, and is entitled to a penalty as provided under Minn. Stat. § 181.14.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendant as follows:

A.    For an award of compensatory relief and damages arising from past and future loss of income and benefits, emotional distress and other damages in excess of $75,000;

B.    For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

C.    For all relief available under the FMLA;

D.    For all relief available under the MHRA;

E.    For all relief available under the Minnesota Government Data Practices Act, including exemplary damages;

F.    For all relief available under the Minnesota Payment of Wages Act;

G.    For injunctive and declaratory relief;

H.    For equitable relief;

I.    For punitive damages;

J.    For such other and further relief available by statute; and

K.    For such other and further relief as the Court deems just and equitable.

**SHANNON LAW, LLC**

Dated: June 06, 2017

_s/Bonnie Smith_
Adrianna H. Shannon (#0387799)
ashannon@shannonlawllc.com
Bonnie M. Smith (#0391915)
bsmith@shannonlawllc.com
333 South 7th St. Suite 2830
Minneapolis, MN 55402
Telephone: (952) 679-8868
Facsimile: (952) 241-9201

COUNSEL FOR THE PLAINTIFF